UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED

00 AUG 31 PM 2:52

U.S. DISTRICT COURT
N.D. OF ALABAMA

LORETTA SHANER,                    )
                                   )
       Plaintiff,                  )
                                   )
vs.                                ) Civil Action No. CV-00-S-1110-NW
                                   )
AETNA LIFE INSURANCE AND           )
ANNUITY COMPANY, a corporation;    )
WILLIAM WALLACE, an individual,    )
                                   )
             Defendants.           )

ENTERED

AUG 31 2000

**MEMORANDUM OPINION**

This action is before the court on defendants' motion to dismiss and plaintiff's motion to remand. The crux of each motion is the same: that is, requiring this court to determine whether plaintiff's state law claims are completely preempted by the Securities Litigation Uniform Standards Act of 1998. Pub. L. No. 105-353, 112 Stat. 3227 (1998).

## I. FACTUAL BACKGROUND

Plaintiff, Loretta Shaner, filed a complaint against defendants, Aetna Life Insurance and Annuity Company and William Wallace, in the Circuit Court of Lauderdale County, Alabama on March 28, 2000. In substance, plaintiff alleges that defendants misrepresented or withheld material facts in connection with the marketing and sale of variable annuities,[1] including a representation that plaintiff "was required to purchase [Aetna's]

---

[1] Complaint ¶¶ 15, 18, 21, 22, 35.



variable annuity in order to invest her IRA money in mutual funds."[2] Because earnings on funds deposited in an IRA account enjoy tax-deferred status, Plaintiff complains that "the variable annuity was not required for income tax deferral," "contained worthless tax deferral fees[,] and has not performed as represented."[3] Plaintiff alleges that Aetna's conduct subjects it to liability under Alabama's common law remedies for unjust enrichment (Count I), money had and received (Count II), conversion (Count III), breach of contract (Count IV), negligence (Count V), negligent and/or wanton training (Count VI), negligent and/or wanton supervision (Count VII), and breach of fiduciary duty (Count VIII). As to defendant Wallace, plaintiff alleges that his conduct constitutes deceit (Count IX), and continuing misrepresentations and suppressions (Count X).

The most important aspect of plaintiff's complaint for purposes of ruling upon the subject motions, however, may be the fact that it contains class action allegations. Plaintiff purports to represent a putative class defined as:

> (a) All persons throughout the United States who have purchased a variable annuity from Aetna in a tax deferred qualified retirement plan;

> (b) All persons throughout the United States who were charged unnecessary fees for tax deferral for

---

[2] *Id.* ¶ 8.

[3] *Id.* ¶ 11.

2

> variable annuities held in qualified retirement accounts[; and]
>
> (c) All persons throughout the United States who were sold variable annuities while owing a tax deferred qualified retirement plan from Aetna.[⁴]

In a transparent attempt to avoid attachment of diversity jurisdiction,[5] plaintiff sued a non-diverse party, eschewed punitive damages, and limited her claim for compensatory damages to "an amount not to exceed $74,000 including interest and costs per class member...."[6]

Defendants nevertheless removed the action pursuant to 28 U.S.C. § 1441(b),[7] alleging federal question jurisdiction under § 1331.[8] They assert plaintiff's state law claims are completely preempted by the Securities Litigation Uniform Standards Act of 1998.[9] Defendants argue this is a "covered class action,"

---

[4] *Id.* ¶ 22.

[5] *See* 28 U.S.C. § 1332(a).

[6] Complaint ¶¶ 11, 12, 13, 14, 15, 16, 18, 20, and 21.

[7] The first sentence of 28 U.S.C. § 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

[8] 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[9] Alternatively, defendants contend that "[t]he class defined in the Complaint includes employer sponsored retirement plans and other 'employee pension benefit plans' as defined by and subject to ERISA." Notice of Removal ¶ 9. This is explained in the affidavit of Lauren Littlefield, Aetna's product manager of healthcare and other non-profit sponsored markets:

> The Huntsville Hospital's deferred compensation plan is not subject to regulation under the Employee Retirement Income Security Act of 1974 (ERISA), since the Huntsville Hospital is a governmental entity

involving a "covered security," that satisfies all requirements for removal under 15 U.S.C. § 78bb(f)(2).[10]   In support of these assertions, defendants submit (as exhibit "B" to their notice of removal) the affidavit of Lauren A. Littlefield, Aetna's product manager of healthcare and other non-profit sponsored markets,[11] who states:

> The plaintiff in this action is Loretta Shaner. [Aetna's] computerized records reflect that Mrs. Shaner is a participant in a deferred compensation plan sponsored by ... Huntsville Hospital in Huntsville, Alabama. The plan is funded with a group annuity contract issued by [Aetna]. [Aetna's] records do not reflect that Mrs. Shaner has ever owned an individual retirement annuity issued by [Aetna]. Rather, she is a participant in the annuity contract funding her employer's plan.

---

> exempt from ERISA.  I am informed, however, that Mrs. Shaner is seeking to pursue her action on behalf of, perhaps among others, "[a]ll persons throughout the United States who have purchased a variable annuity from Aetna in a tax deferred qualified retirement plan."  Many of the employers whose retirement plans are funded with ALIAC group annuity contracts are regulated by ERISA.

Notice of Removal, Exhibit B ¶ 8.  The court need not resolve this dispute, however, because it concludes that plaintiff's class action is precluded by the Securities Litigation Uniform Standards Act of 1998.

[10] The removal provision provides:

> Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(2).  Unless otherwise noted, all cited provisions of the Securities Litigation Uniform Standards Act of 1998 refer to amendments to the Securities Exchange Act of 1934, 15 U.S.C. § 78.  There are parallel provisions in the 1998 Act amending the Securities Act of 1933, 15 U.S.C. § 77a et. seq.  See 15 U.S.C. § 77p (2000).

[11] Plaintiff does not contest the factual accuracy of any statement made in Littlefield's affidavit.  Indeed, in some instances plaintiff relies on statements contained in the affidavit.  (See, e.g., plaintiff's brief submitted in support of her motion to remand at 24.)  Rather, plaintiff's quarrel is with the legal conclusions to be drawn from the submitted evidence.

4

Eligible employees of ... Huntsville Hospital may join its deferred compensation plan by entering into a Participation Agreement with the Hospital. Mrs. Shaner executed such an agreement on May 11, 1994, a true and correct copy of which is attached as Exhibit 1. Under the terms of this Agreement, Mrs. Shaner initially agreed to defer $200 per pay period, or a total of $5200 per year, from amounts she would otherwise have received as part of her wages.

The Huntsville Hospital deferred compensation plan is funded with an [Aetna] group annuity contract. Amounts held from Mrs. Shaner's wages were paid into the contract. A true and correct copy of the annuity contract, as amended to date, and the Hospital's joinder in that contract are attached as Exhibits 2 and 3, respectively.

...

... Mrs. Shaner was able to select from among a number of investment options, some of which were variable options. The variable options were funded through [Aetna's] Separate Account C, a unit investment trust registered under the Investment Company Act of 1940....[12]

## II. STANDARDS OF REVIEW

The threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Williams v. City of Montgomery*, 21 F. Supp. 2d 1360, 1363 (M.D. Ala. 1998). Indeed, a court may dismiss a complaint for failure to state a claim upon which relief can be granted only if it is clear that no relief can be accorded plaintiff under any set of facts that could be proven consistent with the allegations of her complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d

---

[12] Defendants' Notice of Removal, exhibit B ¶¶ 3-5 & 7, at 2-3.

59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.").

In this case, however, the parties have submitted evidentiary materials in support of their respective positions, particularly the affidavit of Lauren Littlefield.  When matters outside the pleadings are presented to and considered by the court in ruling upon a Rule 12(b)(6) motion, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D.D.C. 1986) (Richey, J.).  This court accordingly notified the parties of its intent to treat defendant's motion as one for summary judgment.[13]  Even so, the first issue that must be addressed is plaintiff's motion to remand, to determine whether subject matter jurisdiction has attached.

---

[13] *See* submission order entered May 8, 2000 (doc. no. 10).  *But see* Denis v. Liberty Mutual Insurance Co., 791 F.2d 846, 850 (11th Cir. 1986) (recognizing an exception to the requirement that the court afford plaintiff notice of its intent to convert and an opportunity to supplement the record); Property Management & Investments, Inc. v. Lewis, 752 F.2d 599, 605 (11th Cir. 1985) (same).

### III. DISCUSSION

Defendants must overcome the well-pleaded complaint rule, which requires that a court look to the face of plaintiff's complaint to determine whether a claim arises under federal law. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of [her] own cause of action shows that it is based upon those laws or that Constitution."). Though seemingly arbitrary, this rule advances several principles. First, it "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Second, it preserves our federalist system by allowing state courts to develop law in which state law issues and policies predominate. *See* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of a Definition*, 76 Tex. L. Rev. 1781, 1783 (1998). Third, it promotes efficiency by preventing the shifting of cases between state and federal courts after litigation has begun. *Id.* In accordance with these principles, a case may not be removed from state to federal court based merely on a federal defense.

> [I]t is now settled law that a case may <u>not</u> be removed to
> federal court on the basis of a federal defense,

including the defense of preemption,[14] even if the
defense is anticipated in the plaintiff's complaint, and
even if both parties concede that the federal defense is
the only question truly at issue.

*Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (emphasis in

original).

It is undisputed that plaintiff's complaint, on its face, does

not contain a "civil action arising under the Constitution, laws,

or treaties of the United States." 28 U.S.C. § 1331. The face of

plaintiff's complaint is limited to claims founded upon Alabama

law.   Nonetheless, defendants argue that this case falls within

what the Supreme Court has termed "an 'independent corollary' to

the well-pleaded complaint rule ... known as the 'complete pre-

emption' doctrine." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at

---

[14] It is important to draw a distinction between the concept of ordinary
preemption — to which the Supreme Court is referring in this passage from the
*Caterpillar* opinion — and the doctrine of complete preemption discussed *infra*.
That is because the complete preemption inquiry is jurisdictional, whereas the
ordinary preemption inquiry is substantive.   The Eleventh Circuit recently
explained the difference in the two concepts:

> Stated simply, complete preemption functions as a narrowly drawn
> means of assessing federal removal jurisdiction, while ordinary
> preemption operates to dismiss state claims on the merits and may be
> invoked in either federal or state court.   As summarized by the
> Fifth Circuit,
>
> > "complete preemption" is less a principle of substantive
> > preemption than it is a role of federal jurisdiction.
> > In other words, complete preemption principally
> > determines not whether state or federal law governs a
> > particular claim, but rather whether that claim will,
> > irrespective of how it is characterized by the
> > complainant, [serve as the basis for federal question
> > jurisdiction].

Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851,
854-855 (11th Cir. 1999) (*quoting* McClelland v. Gronwaldt, 155 F.3d 507, 516-17
(5th Cir. 1998)).

2430 (citation omitted).

## A.    The Complete Preemption Doctrine

The complete preemption doctrine prevents a plaintiff from using "artful pleading" techniques to avoid federal jurisdiction. *See Rivet v. Regions Bank*, 522 U.S. 470, 471, 118 S.Ct. 921, 923, 139 L.Ed.2d 912 (1998).  It applies when Congress manifests an intention that federal law should provide the exclusive avenue of relief in some area of law, and that all such claims be heard in federal court.  "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983) ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.")).  This exception only applies to those rare instances in which "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (citation and footnote omitted).  "'Because

they are recast as federal claims, state law claims that are held to be completely preempted give rise to 'federal question' jurisdiction and thus may provide a basis for removal.'" *Blab T.V. of Mobile, Inc. v. Comcast Cable Communi-cations, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 512 (5th Cir. 1998)).

Even while recognizing that various federal circuits have articulated slightly different tests for determining whether the complete preemption doctrine applies to a particular case, *see Blab T.V. of Mobile*, 182 F.3d at 856-57, the Eleventh Circuit observed that each analytical approach "focuses primarily upon evaluating Congress's intent, which is the 'touchstone' of federal court removal jurisdiction." *Id.* at 857. The crux of the inquiry is the presence or absence of jurisdictional language in the statute, considered along with the statute's legislative history. *Id.* The Eleventh Circuit cautioned, however, that "although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so <u>hesitatingly</u> and displays no enthusiasm to extend the doctrine into areas beyond the LMRA [Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*] and ERISA [the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a) *et seq.*]." *Id.*, at 856 (emphasis supplied).

.

**B.    The Securities Litigation Uniform Standards Act**

The Securities Litigation Uniform Standards Act of 1998 cannot be understood except in juxtaposition to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, which represented a Congressional attempt to eliminate so-called "strike suits": non-meritorious class actions alleging some violation of securities law, and brought in the hope that a defendant will settle quickly, rather than absorb the potentially overwhelming costs of extensive discovery, or run the risk of an adverse judgment at trial. *See* S. Rep. No. 104-98, at 5 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 682. Congress believed such suits discouraged disclosure and hampered capital formation. *See id.*[15] Among other things, the

---

[15] One student summarized the purposes intended by Congress when enacting the Public Securities Litigation Reform Act of 1995 ("PSLRA") as follows:

> Congress intended the PSLRA to serve three primary purposes. First, Congress expected the law to encourage plaintiff's lawyers to bring only meritorious claims of securities fraud and to encourage defendants to vigorously defend against nonmeritorious charges. Under this scenario, only those claims that have a likelihood of succeeding at trial will be settled, while strike claims will be dispensed with via early dismissal or summary judgment.

> The second stated purpose of the PSLRA is to shift the control of the litigation from the lawyers to the clients. In the pre-PSLRA world, lawyers controlled both the initiation of the suit and the settlement process. The clients exercised little, if any, control over the process. Decisions such as when to sue and when to settle were made by the lawyer with the intent of securing payment for his or her services.

> The final stated purpose of the PSLRA is to encourage more voluntary disclosure of information by securities issuers. The underlying goal of the federal securities laws is to foster the release of valuable information to investors. The ease at which securities fraud action could be brought prior to the PSLRA, however, caused many issuers to refrain from broad voluntary disclosure or forward-looking information. The PSLRA seeks to

11

Public Securities Litigation Reform Act instituted heightened pleading requirements for securities fraud class actions and imposed stays on discovery until a court determined the legal sufficiency of a plaintiff's claims.

Congress subsequently found that plaintiffs were circumventing the 1995 Act by filing class actions in state court, alleging violations of state fraud laws. *See* H. R. Conf. Rep. No. 105-803, at 1 (1998). Congress therefore enacted the Securities Litigation Uniform Standards Act of 1998 for the express purpose of preventing state private securities class action lawsuits from being used to skirt, and thereby thwart the purposes of, the Private Securities Litigation Reform Act. *See id.* The 1998 Act anticipates exclusive federal jurisdiction over "covered class actions" involving "covered securities." It bars all state law based securities fraud suits regardless of the forum. It states:

> No covered class action based upon the statutory or common law of any state or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

---

reduce this fear by providing various protections to securities issuers when disclosing information to investors.

Michael G. Dailey, *Preemption of State Court Class Action Claims for Securities Fraud: Should Federal Law Trump?*, 67 U. Cin. L. Rev. 587, 588-89 (1999) (footnotes omitted).

> (B)  that  the  defendant  used  or  employed  any
> manipulative  or  deceptive  device  or  contrivance  in
> connection  with  the  purchase  or  sale  of  a  covered
> security.

15 U.S.C. § 78bb(f)(1).  It also provides for removal to federal

court of any of these actions instituted in  state court:

> Any  covered  class  action  brought  in  any  State  court
> involving  a  covered  security,  as  set  forth  in  paragraph
> (1),  shall  be  removable  to  the  Federal  district  court  for
> the  district  in  which  the  action  is  pending,  and  shall  be
> subject  to  paragraph  (1).

15 U.S.C. § 78bb(f)(2).

The legislative history of the Securities Litigation Uniform

Standards Act of 1998 emphasizes Congress' intent to eliminate

"meritless 'strike' suits.  The purpose of these strike suits is to

extract a sizeable settlement from companies that are forced to

settle, regardless of the lack of merits of the suit, simply to

avoid the potentially bankrupting expense of litigating."  H. R.

Conf. Rep. No. 105-803, at 13 (Joint Explanatory Statement of the

Conference Committee).  The Act "amend[ed] the Securities Act of

1933 and the Securities Exchange Act of 1934 to limit the conduct

of securities class actions under State law...."  Pub. L. No. 105-

353, 112 Stat. 3227 (1998).  Congress made specific factual

findings that unequivocally establish that the purpose of this law

is to preclude a private party from instituting a "covered class

action" in any court, state or federal.

The Congress finds that —

(1)   the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;

(2)   since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts;

(3)   this shift has prevented that Act from fully achieving its objectives;

(4)   State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and

(5)   in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.

Pub. L. No. 105-353 at Sec. 2; *see also* H. R. Conf. Rep. No. 105-803, at 1 (1998).

Moreover, when enacting the 1998 Act, Congress sought to establish federal courts as "the exclusive venue for most securities class action lawsuits." H.R. Conf. Rep. No. 105-803, at 13 (1998).

The purpose of this title is to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in

14

State, rather than in Federal, court.

...

Additionally, consistent with the determination that Congress made in the National Securities Markets Improvement Act (NSMIA), this legislation establishes uniform national rules for securities class action litigation involving our national capital markets. Under the legislation, class actions relating to a "covered security" ... alleging fraud or manipulation must be maintained pursuant to the provisions of Federal securities law, in Federal court ....

"Class actions" that the legislation bars from State court include actions brought on behalf of more than 50 persons, actions brought on behalf of one or more unnamed parties, and so-called "mass actions," in which a group of lawsuits filed in the same court are joined or otherwise proceed as a single action.

*Id.* To that end, Congress inserted a specific removal provision, providing that "[a]ny covered class action brought in any State court involving a covered security... <u>shall be removable to the Federal district court</u> for the district in which the action is pending...." 15 U.S.C. § 78bb(f)(2) (emphasis supplied).

This jurisdictional language, read in conjunction with the unequivocal statements of Congressional intent that such cases be heard exclusively in federal courts, in accordance with federal law and procedural standards, lead this court to conclude that the Securities Litigation Uniform Standards Act of 1998 completely preempts all claims involving "covered class actions" and "covered securities" as defined in the statute.

C.   **Covered Class Actions**

Plaintiff does not seriously contest defendants' assertion

that this is a "covered class action," and it would be futile for

her to suggest otherwise.   The Securities Litigation Uniform

Standards Act defines the term "covered class action" as:

> (i)   any single lawsuit in which—
>
> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
>
> (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; . . . .

15 U.S.C. § 78bb(f)(5)(B)(i).  Here, plaintiff seeks to represent

a nationwide class that, she estimates, exceeds 5,000 persons.[16]

She claims that "questions of law and fact common to the members of

the class predominate over any questions affecting individual

members...."[17]  In light of these assertions, the court finds that

the present action satisfies both definitions of a "covered class

action."

---

[16] Complaint ¶ 23.

[17] *Id.* ¶ 27.

16

**D.    Covered Security**

The harder question, and the one most contested by plaintiff, is whether the deferred variable annuity that she purchased constitutes a "covered security."    The Securities Litigation Uniform Standards Act defines the term "covered security" by referencing § 18(b) of the Securities Act of 1933 (now codified as 15 U.S.C. § 77r(b)).[18]

> The term "covered security" means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of this title, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under the Securities Act of 1933 pursuant to rules issued by the Commission under section 77d(2) of this title.

15 U.S.C. § 78bb(f)(5)(E).    In turn, the pertinent portion of § 77r(b) supplies the following definition of "covered securities":

> A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.

15 U.S.C. § 77r(b)(2).

Defendants have submitted evidence that plaintiff's annuity was funded through a unit investment trust that is registered under the Investment Company Act of 1940.[19]    Plaintiff nevertheless

---

[18] This section was added to the Securities Act of 1933 by the National Securities Markets Improvement Act of 1996, Pub.L. No. 104-290, 110 Stat. 3416 (1996).

[19] See Littlefield's affidavit (exhibit B to notice of removal) ¶ 7.  The Investment Company Act of 1940 now is codified at 15 U.S.C. § 80a-1 et seq.

17

quarrels with the definition of "security": she asserts the "Aetna Insurance annuity contract at issue in this case is regulated and approved by the State of Alabama Department of Insurance"[20]; and then extrapolates from that premise the argument that her deferred annuity is an insurance product, not a security.

The rub lies in the fact that the Supreme Court has held that a deferred variable annuity contract _is_ a "security" subject to the registration requirements of the Securities Act of 1933 and the Investment Company Act of 1940. _Securities and Exchange Commission v. Variable Annuity Life Insurance Company of America_, 359 U.S. 65, 71, 79 S.Ct. 618, 622, 3 L.Ed.2d. 640 (1959) ("VALIC"); _see also Securities and Exchange Commission v. United Benefit Life Insurance Company_, 387 U.S. 202, 210-211, 87 S.Ct. 1557, 1562, 18 L.Ed.2d. 673 (1967) (flexible fund annuity held not an exempt annuity). The Court's plurality opinion in _VALIC_ acknowledged that variable annuities and life insurance policies possess some common characteristics,[21] but nonetheless concluded that variable annuities qualify as "securities," because such products place "all the

---

[20] Plaintiff's memorandum in support of motion to remand at 7-8.

[21] _See_ Securities and Exchange Commission v. Variable Annuity Life Insurance Company of America, 359 U.S. 65, 70-71, 79 S.Ct. 618, 621-22 , 3 L.Ed.2d. 640 (1959) (plurality opinion) (Douglas, J.). The plurality opinion consistently refers to the annuity at issue in the _Variable Annuity Life Insurance Company_ case as a "variable annuity." Upon examination of the additional facts supplied in the concurring opinion authored by Justice Brennan, however, it becomes clear that the annuity contract at issue there in fact was a "_deferred_ variable annuity." _See_ 359 U.S. at 81-82, 79 S.Ct. at 627-28 (Brennan, J., and Stewart, J., concurring) (emphasis supplied).

investment risks on the annuitant, none on the company." *VALIC*,

359 U.S. at 71, 79 S.Ct. at 621.

> [W]e conclude that the concept of "insurance" involves
> some investment risk-taking on the part of the company.
> The risk of mortality, assumed here, gives these variable
> annuities an aspect of insurance. Yet it is apparent,
> not real; superficial, not substantial. In hard reality
> the issuer of a variable annuity that has no element of
> a fixed return assumes no true risk in the insurance
> sense. It is no answer to say that the risk of declining
> returns in times of depression is the reciprocal of the
> fixed-dollar annuitant's risk of loss of purchasing power
> when prices are high and gain of purchasing power when
> they are low. We deal with a more conventional concept
> of risk-bearing when we speak of "insurance." For in
> common understanding "insurance" involves a guarantee
> that at least some fraction of the benefits will be
> payable in fixed amounts. ... The companies that issue
> these annuities take the risk of failure. But they
> guarantee nothing to the annuitant except an interest in
> a portfolio of common stocks or other equities — an
> interest that has a ceiling but no floor. There is no
> true underwriting of risks, the one earmark of insurance
> as it has commonly been conceived of in popular
> understanding and usage.

*Id*. at 71-72, 79 S.Ct. at 622-23 (plurality opinion) (footnotes and

citations omitted). Similarly, Justices Brennan and Stewart

explained in their concurrence why deferred variable annuities

should not be considered insurance contracts.

> Much bewilderment could be engendered by this case if the
> issue were whether the contracts in question were
> "really" insurance or "really" securities — one or the
> other. It is rather meaningless to view the problem as
> one of pigeonholing these contracts in one category or
> the other. Obviously they have elements of conventional
> insurance, even apart from the fixed-dollar term life
> insurance ... sold with some of these contracts.... They
> patently contain a significant annuity feature ... and

19

> the granting of annuities has been considered part of the business of life insurance. ... But the point is that, even though these contracts contain, for what they are worth, features of traditional annuity contracts, administering them also involves a very substantial and in fact predominant element of the business of an investment company, and that in a way totally foreign to the business of a traditional life insurance and annuity company, as traditionally regulated by state law. This is what leads to the conclusion that it is not within the intent of the 1933 and 1940 statutes to exempt them.

*Id.* at 80-81, 79 S.Ct. at 627 (Brennan, J., and Stewart, J., concurring).

In light of the foregoing, this court concludes that the deferred variable annuity purchased by plaintiff is a "covered security," not an insurance product. Plaintiff's annuity contract contained a separate account, "Aetna's Variable Annuity Account C," into which plaintiff's weekly withholdings were deposited and invested. The separate account was registered with the Securities and Exchange Commission as an investment company.[22] This registration satisfies the requirement of 15 U.S.C. § 77r(b)(2).

Plaintiff bears the risk of her investment, because the annuity she purchased through Aetna is a variable annuity. Although her annuity defers compensation until Plaintiff reaches retirement age, the amount of compensation she will receive at retirement will vary, depending on the success of her investments. The court finds that it is this possibility of variation that

---

[22] *See* Littlefield's affidavit (exhibit B to notice of removal) at exhibit 5.

converts plaintiff's annuity into a "covered security." *See In re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation*, No. 99-MD-1309, 2000 WL 991609 at *4 (D. Minn. July 11, 2000) ("To the extent that an insurance policyholder does not enjoy a fixed benefit, and instead shares in the advantages and risks of equity investments, he owns a security, or at least a product with the qualities of both insurance and a security."); *see also Lander v. Hartford Life and Annuity Insurance Company*, No. 3:00cv114 (AVC) (D. Conn. July 14, 2000) (Covello, C.J.) (memorandum opinion submitted by defendants (doc. no. 20)).

### IV. CONCLUSION

Based on the foregoing, this court concludes that it possesses subject matter jurisdiction, plaintiff's claims are completely preempted, plaintiff's motion to remand is due to be denied, and the present complaint must be dismissed. Plaintiff's class action allegations premised upon Alabama law are barred by the Securities Litigation Uniform Standards Act of 1998. Such dismissal, however, will not prohibit plaintiff from pursuing her claims individually, should she choose to do so, in an appropriate forum. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this **31st** day of August, 2000.

21

United States District Judge